UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| PAULA S. FORD,<br><br>    Plaintiff,<br><br>v.<br><br>ALLIANCE DATA SYSTEMS CORPORATION d/b/a TEXAS ALLIANCE DATA SYSTEMS CORPORATION and COMENITY BANK,<br><br>    Defendants. | CIVIL ACTION<br><br>COMPLAINT 3:18-cv-01777<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** the Plaintiff, Paula S. Ford ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, ALLIANCE DATA SYSTEMS CORPORATION d/b/a TEXAS ALLIANCE DATA SYSTEMS CORPORATION ("Alliance") and COMENITY BANK ("Comenity"), (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

1

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Southern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Southern District of Illinois.

## PARTIES

5. Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, resided in the Southern District of Illinois.

6. Plaintiff is a "person" as defined by 47 U.S.C. §153(39) of the TCPA.

7. Comenity works "with hundreds of well-known and much-loved companies to offer their customers – customers just like you – credit programs that connect loyal shoppers to the brands they love."[1]

8. Comenity is a Delaware corporation engaged in the business of offering credit services and collecting or attempting to collect, directly or indirectly, debts owed or due using the mail and telephone from consumers across the country, including consumers in the State of Illinois.

9. Alliance "is the engine behind loyalty and marketing campaigns for more than 1,000 consumer-facing companies worldwide across all industries: retail, travel, pharmaceutical, financial services, auto, and more."[2]

10. Alliance further states, "We truly understand millions of individual consumers and their habits through our data analysis expertise. We understand where people like to shop, what device they like to use, the time of day they prefer to shop, what they're shopping for, and the specific message that will interest them in a purchase."[2]

11. Alliance further boasts:

---

[1] http://about.comenity.net/about (Last accessed on September 11, 2018.)
[2] https://www.alliancedata.com (Last accessed on September 11, 2018.)

> "At Alliance Data's card services business, we know 40 million consumers. How? They carry one (or more) of our clients' branded credit cards, either in their wallet or on their mobile device. We manage more than 160 branded credit programs — private label, co-brand, and commercial — for the world's most recognizable brands.
> So, what does that mean exactly? When you use your Caesars Entertainment, Pottery Barn, J. Crew, or Victoria's Secret credit card (just to name a few), that's actually us. We capture transactional data, then use it to better understand consumer behavior and strengthen the ties between our clients and their customers. We also talk directly to consumers, providing outstanding and industry-leading customer care as part of the branded credit program. This combination translates to highly effective, multi-channel marketing communications for our clients. We also create incentives that drive sales, engage cardholders, and foster long-term brand loyalty." [2]

12. Alliance is Comenity's parent-company and is a Delaware corporation engaged in the business of marketing credit services using the telephone to consumers across the country, including consumers in the State of Illinois. Alliance's registered agent is CT Corporation System located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## FACTS SUPPORTING CAUSE OF ACTION

13. Plaintiff had previously obtained store credit cards from Lane Bryant[3] and Woman Within[4]. The accounts for the aforementioned retailers are serviced through Comenity and Plaintiff incurred debt on these credit cards ("subject debts").

14. Around 2015, Plaintiff lost her job and began experiencing financial difficulties.

15. Although she tried to keep up with the payments, Plaintiff subsequently defaulted on the subject debts.

16. After Plaintiff defaulted on the subject debts, Comenity began placing collection calls to her cellular telephone attempting to collect the subject debts.

---

[3] "This site gives access to services offered by Comenity Bank. Comenity Bank issues your Lane Bryant Credit Card account." https://c.comenity.net/lanebryant/pub/signin/SignIn.xhtml (Last accessed on September 11, 2018.)

[4] "This site gives access to services offered by Comenity Bank. Comenity Bank issues your Woman Within Credit Card account." https://c.comenity.net/womanwithin/ (Last accessed on September 11, 2018.)

17. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of her cellular telephone number, (618) XXX-7536. Plaintiff is and has always been financially responsible for this cellular telephone and its services.

18. Plaintiff immediately answered a call from Comenity during which she informed Comenity that she would contact them once her financial situation improves. The calls did not stop.

19. Subsequently, Plaintiff answered another call from Comenity. During this call Plaintiff again informed Comenity that she was experiencing financial hardship. She then requested that Comenity stop contacting her and take her off the call list. Comenity's representative informed Plaintiff that Comenity would not take her off the list and would continue to call her until the subject debts were paid.

20. As Comenity's representative stated, Comenity did not honor her request to stop calling her and continued to call.

21. Plaintiff again answered a call from Comenity. During this call Plaintiff reiterated that she was experiencing financial difficulties and was unable to make a payment. Plaintiff *again* requested that Comenity stop calling her.

22. Comenity called her back that very day.

23. Furthermore, Comenity placed numerous calls to Plaintiff's cellular phone which resulted in Plaintiff being greeted by an automated pre-recorded message before being transferred to a live agent.

24. Additionally, Comenity is sending Plaintiff text messages about the subject debts. Plaintiff has attempted to opt out of these text messages to no avail.

25. Notwithstanding Plaintiff's multiple requests that Defendants cease placing calls to her cellular phone, Defendants placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular phone between late 2017 and the present day.

26. Moreover, Plaintiff also hears what sounds to be call center noise in the background of Defendants' collection calls.

27. Plaintiff's demands that Defendants' phone calls cease fell on deaf ears and Defendants continued their phone harassment campaign.

28. Defendants intentionally harassed and abused Plaintiff as Defendants were aware of Plaintiff's financial situation, yet they continued to try and call her.

29. Upon information and belief, Defendants placed their calls to Plaintiff's cellular telephone using an automated telephone dialing system, a system that is commonly used in the debt collection industry to collect defaulted debts.

30. The phone numbers that Defendants most often use to contact Plaintiff are (913) 312-5191 and (913) 312-5192, but upon information and belief, they may have used other phone numbers to place calls to Plaintiff's cellular phone.

**DAMAGES**

31. Plaintiff has suffered and continues to suffer from emotional distress, mental anguish, and anxiety as a direct result of Defendants' unlawful collection practices.

32. Defendants' harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

33. Defendants' phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, physical harm, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, increased risk of

personal injury due to the distraction caused by the phone calls, diminished value and utility of her telephone equipment and telephone subscription services, the wear and tear caused to her cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

34. Concerned about the violations of her rights and invasion of her privacy, Plaintiff sought the assistance of counsel to cease Defendants' collection tactics, incurring costs and expenses.

## COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

35. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

36. Defendants repeatedly placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or prerecorded or artificial voice without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

37. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

38. Upon information and belief, based on the prerecorded messages and Defendants' lack of prompt human response during the phone calls in which Plaintiff answered, Defendants used an ATDS to place calls to Plaintiff's cellular telephone.

39. Upon information and belief, the ATDS employed by Defendants transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone or transfers the call to a live agent once a prerecorded message has finished playing.

40. Defendants also repeatedly sent or caused to be sent frequent non-emergency text messages, including but not limited to the messages referenced above, to Plaintiff's cellular

telephone number using a telephone facsimile machine ("TFM") or transmitting text without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(C).

41. The TCPA defines TFM as "equipment which has the capacity...to transcribe text or images, or both from paper into an electronic signal and to transmit that signal over a regular telephone line." 47 U.S.C. §227(a)(3).

42. Upon information and belief, based on Defendants' lack of prompt response to Plaintiff's text messages and the frequency of the text messages, Defendants used a TFM.

43. Defendants violated the TCPA by placing numerous calls and text messages between late 2017 and the present day to Plaintiff's cellular phone, after Plaintiff demanded that Defendants cease placing calls and texts to her cellular phone and with knowledge that they did not have consent to contact Plaintiff on her cellular phone.

44. As pled above, Plaintiff was severely harmed by Defendants' collection calls to her cellular phone.

45. Upon information and belief, Defendants have no system in place to document and archive whether they have consent to contact consumers on their cellular phones.

46. Upon information and belief, Defendants knew that their collection techniques were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

47. Defendants, through their agents, vendors, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

48. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendants are liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendants' willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff Paula S. Ford respectfully prays this Honorable Court for the following relief:

a. Declare Defendant's calls and texts to Plaintiff to be violations of the TCPA;
b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
c. Awarding Plaintiff costs and reasonable attorney fees;
d. Enjoining Defendant from further contacting Plaintiff; and
e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT AGAINST DEFENDANTS

49. Plaintiff restates and reallages paragraphs 1 through 48 as through fully set forth herein.

50. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

51. Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

52. Defendants are engaged in commerce in the State of Illinois with regard to Plaintiff. Defendants specialize in debt collection, which is an activity within the stream of commerce and utilized in its regular course of business.

53. Defendants violated 815 ILCS 505/2 by engaging in unfair acts in its attempts to collect the subject debts from Plaintiff.

### a. Unfairness and Deception

54. It was unfair for Defendants to seek to collect from Plaintiff the subject debts through relentless harassing phone calls and text messages to her cellular phone in an attempt to browbeat her into making a payment.

55. It was unfair and deceptive for Defendants to relentlessly contact Plaintiff through means of an ATDS when they had no reason or permission to do so. Defendants were aware of Plaintiff's multiple requests to stop contacting her on her cellular phone.

56. It was unfair for Defendants to place or cause to be placed numerous phone calls to Plaintiff's cellular phone between late 2017 and the present day, without her consent.

57. It was unfair for Defendants to continue placing calls to Plaintiff after she demanded that the calls cease on multiple occasions.

58. It was deceptive for Defendants to contact Plaintiff on her cellular phone multiple times in one day, on back to back days, and using different phone numbers with knowledge that they did not have consent to place calls to her cellular phone and after Plaintiff demanded that the calls cease.

59. Defendants' unfair and deceptive conduct is inherently oppressive as Plaintiff had no choice but to submit to the relentless harassing phone calls to her cellular phone.

60. Moreover, Defendants' unfair conduct is against public policy because it needlessly subjects consumers to unsolicited calls, resulting in significant harm in the form of invasion of privacy.

61. Upon information and belief, Defendants systematically place unsolicited and harassing phone calls to consumers in Illinois in order to aggressively collect debts in default to increase its profitability at the consumers' expense.

62. Upon information and belief, placing unsolicited and harassing phone calls to Illinois consumers is an unfair business practice willfully employed by Defendants and is done on a large scale.

63. Moreover Defendants' unlawful and unfair debt collection efforts gives it an unfair competitive advantage over business that collect lawfully (companies who legally place calls with prior consent, as authorized, and who lawfully cease calling upon requests to stop).

64. As alleged above, Plaintiff was substantially harmed by Defendants' misconduct.

65. An award of punitive damages is appropriate because Defendants' conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the harassing phone calls.

**WHEREFORE**, Plaintiff Paula S. Ford requests that this Honorable Court:
a. Enter judgment in Plaintiff's favor and against Defendants;
b. Award Plaintiff her actual damages in an amount to be determined at trial;
c. Award Plaintiff her punitive damages in an amount to be determined at trial;
d. Award Plaintiff her reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: September 28, 2018

Respectfully Submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (331) 307-7646
ataylor@sulaimanlaw.com